IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILLIAM R. KOWALSKI, | ) | Civ. No. 05-00679 BMK |
| | ) | Civ. No. 06-00182 BMK |
| Plaintiff, | ) | Civ. No. 05-00787 BMK |
| | ) | |
| vs. | ) | ORDER DENYING IN PART AND |
| | ) | GRANTING IN PART |
| MOMMY GINA TUNA | ) | DEFENDANTS' MOTION FOR |
| RESOURCES, *et al.*, | ) | SUMMARY JUDGMENT ON |
| | ) | DAMAGES |
| | ) | |
| Defendants . | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITRA MINA SEAFOOD | ) | |
| CORPORATION | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM R. KOWALSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD FRIEND , and | ) | |
| SEAFRIEND | ) | |
| _____ | ) | |

ORDER DENYING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT ON DAMAGES

Now before the Court is a motion for partial summary judgment filed

by Defendants Mommy Gina Tuna Resources, King Tuna, Inc., Joaquin Lu, Citra

Mina Seafood Corporation, Richard Friend, and Seafriend (collectively, "the

Defendants").  The Defendants seek to limit the damages that Plaintiff William R.

Kowalski ("Kowalski") may seek in his patent infringement action against them

for infringement of Kowalski's U.S. Patent 5,972,401 ("the Kowalski Patent").

Specifically, Defendants seek to prevent Kowalski from claiming the lost profits of

his company, Hawaii International Seafood, Inc. ("HISI"), and to limit Kowalski's

reasonable royalty rate to eight cents per pound for tuna and four cents per pound

for lesser species.  This motion was heard on August 19, 2008.  After careful

consideration of the motion, the supporting and opposing memoranda, and the

arguments of counsel, Defendant's motion is hereby GRANTED in part and

DENIED in part.

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are only granted when the court

determines that there is no genuine issue of material fact, and that the undisputed

facts warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P.

2

56(c).  In determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir. 2000).

The court's function in deciding a motion for summary judgment is not to try issues of fact, but to determine whether there are any issues to be tried. Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper.   See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987) (summary judgment must be denied if a rational trier of fact might resolve the issue in favor of the non-moving party).

The party moving for summary judgment bears the initial burden of showing "an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 324.  Once this initial showing is made by the movant, the burden then shifts to the nonmovant to demonstrate the existence of a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

## INFRINGEMENT DAMAGES

The owner of a patent is entitled to "damages adequate to compensate

for the infringement."  35 U.S.C. § 284.  "Damages," as used in § 284

"encompasses an amount necessary to redress any direct injury from infringement."

King Instruments Corp. v. Perego, 65 F.3d 941, 949 (Fed. Cir. 1995.)  Such a

"direct injury" may be sustained by the patentee even where he or she does not

"make, use, or sell the invention."  Id.  Under § 284, "Congress sought to ensure

that the patent owner would in fact receive full compensation for 'all damages' he

suffered as a result of the infringement."  General Motors Corp. v. Devex Corp.,

461 U.S. 648, 654-55(1983).  Where such an injury is suffered, a patentee may

recover his or her lost profits as long as those lost profits were reasonably

foreseeable.  Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538 (Fed. Cir. 1995) (en banc)

(stating that "under § 284 of the patent statute, the balance between full

compensation, which is the meaning that the Supreme Court has attributed to the

statute, and the reasonable limits of liability encompassed by general principles of

law can best be viewed in terms of reasonable, objective, foreseeability").

        A parent company that holds an infringed patent may only recover the

lost profits of its subsidiary where it shows that the profits of its subsidiary flow

"inexorably" to the parent.  Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359, 1367

(Fed. Cir. 2008) (citing to Poly-America L.P. v. GSE Lining Technology, Inc., 383

F.3d 1303 (Fed. Cir. 2004)).  While it is frequently the case that "patentees tend to

try to fit their damages cases into the 'lost profits' framework, or else fall back on the statutory grant of a reasonable royalty," lost profits is only one of several possible ways to "measure the amount of damages that will 'fully compensate' the patentee under § 284." Mars, Inc., 527 F.3d at 1366.  "The correct measure of damages is a highly case-specific and fact-specific analysis." Id.

At minimum, a patent owner must be awarded "a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284.  "An established royalty is usually the best measure of a 'reasonable' royalty for the use of a given invention, because it removes the need to guess at the terms to which the parties would hypothetically agree." Monsanto Co. v. McFarling, 488 F.3d 973, 978-79 (Fed. Cir. 2007).  Royalty rates that are set through settlement of infringement suits, however, "should not be considered evidence of an 'established' royalty." Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1164 n.11 (Fed. Cir. 1978).

DISCUSSION

I.  LOST PROFITS

Defendants contend that Kowalski cannot recover lost profits damages because he himself never sold any product, and "[t]he general rule in patent litigation is simple, straightforward, and clear–patentee must sell some product to

claim lost profits as damages." (Def.'s Reply 5.)  Defendants cite to <u>Poly-America</u>

for this proposition, and indeed, <u>Poly-America</u> does contain language to this effect.

But the more recent decision in <u>Mars, Inc.</u> demonstrates that the key question is

whether the profits from the subsidiary flowed "inexorably" to the parent.

      Kowalski's claim for damages under a lost profits theory hinges on the

fact that as the sole owner, president, and CEO of HISI, he had complete control of

any profits reaped by the company, and claims that he would have funneled those

profits to himself.  He had complete discretion to dispose of the profits of the

company as he saw fit, and therefore, he claims, they flowed inexorably to him.

However, Kowalski established HISI as an entity separate from himself as patent

holder "to suit [his] own goals and purposes"; therefore, he " must take the benefits

with the burdens," <u>Poly-America</u>, 383 F.3d at 1311.  Mere ownership and control is

insufficient to prove that profits flowed inexorably from a subsidiary to a parent.

<u>Mars, Inc.</u>, 527 F.3d at 1367 (finding that complete ownership of a subsidiary, as

well as consolidated financial statements was insufficient to show the inexorable

flow of profits).

      Here, the flow of profits from HISI to Kowalski is no more inexorable

than Kowalski's intent that it be so.  While it might have been standard or "usual"

(Pl.'s Opp. 8)  for the owner of a sole proprietorship to take all of the profits of the

business, it is not necessarily the case.  (See, e.g. Pl.'s Ex. 12 (discussing hypothetical situations assuming that under certain circumstances, an "S" corporation might not distribute its profits).) In the absence of any evidence of inexorability, either contractual, structural or historical, the Court finds that Kowalski has failed to raise a genuine issue of material fact as to whether profits flowed inexorably from HISI to him.  Summary judgement for defendants on the issue damages under a theory of lost profits is GRANTED.

This does not mean, however, that Kowalski may not seek to prove at trial all of the damages that he personally suffered as the patent holder.  "[W]hile lost profits is plainly one way to measure the amount of damages that will "fully compensate" the patentee under § 284, we have never held that it is the only one." Mars Inc., 527 F.3d at 1366.  The patent holder in an infringement case may prove damages under "theories entirely distinct from lost profits."  Id.  Therefore, to the extent that Defendants' motion is for summary judgment on any theory of damages exclusive of reasonable royalty or lost profits, the motion is DENIED.

## II.  REASONABLE ROYALTY

Defendants also argue that the reasonable royalty rate in this case should be limited to eight cents per pound for tuna, and four cents per pound for other species.  Defendants contend that Kowalski "has a history of licensing the

patent and receiving royalties" at that rate, and that "[t]his consistent pattern of licensing at the same rate establishes a royalty rate."  (Mem. Supp. Mot. 8).

In support , Defendants produce a settlement agreement between Kowalski and Hilo Fish which licenses the Kowalski patent for royalty rates of eight cents per pound for tuna and four cents per pound for other species.  (Defs. Ex. E.)  Based on this evidence, and on the somewhat ambiguous and poorly recorded deposition testimony of Mr. Clint Taylor (Defs.' Ex. G) Defendants contend that "[e]very entity found to infringe the 401' patent has been granted the same royalty rate . . . after settling the infringement action."  (Defs.' Mem. Supp. 8.)

In response, Kowalski correctly claims that rates negotiated in the context of litigation are inapplicable to the reasonable rate determination.  See Panduit Corp., 575 F.2d at 1164 n.11 (Fed. Cir. 1978) (stating that "[a] royalty, if any, resulting from settlement of an infringement suit . . . should not be considered as evidence of 'established' royalty . . .") Therefore, argues Kowalski, Defendants have not met their initial burden of showing established royalty rates.

In reply, Defendants contend that in addition to the litigation-driven royalty rates, "Kowalski has established a royalty rate outside of litigation" (Defs.' Reply 7 (emphasis removed).)  In support of this proposition, they point to Taylor deposition, included with their original motion as Exhibit G.  This is the first time,

8

however, that Defendants have explicitly made this argument or pointed to evidence tending to show an established rate outside of the rates negotiated during settlement. Under the Local Rules, " [a]ny arguments raised for the first time in the reply shall be disregarded."  Local Rule 7.4.  Here, Kowalski has not been provided an opportunity to produce evidence rebutting Defendants' arguments for an established royalty rate outside of settlement, so this argument will be disregarded. Defendants' have failed to meet their burden of producing proper evidence of an established reasonable royalty rate, and accordingly, summary judgment on this issue is hereby DENIED.

CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment on damages is hereby GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED as to Kowalski's lost profit damages, but DENIED as to other damages Kowalski may seek to prove at trial, and DENIED as to the reasonable royalty rates.

Dated: Honolulu, Hawaii, August 27, 2008

IT IS SO ORDERED.



  /S/ Barry M. Kurren       
Barry M. Kurren
United States Magistrate Judge

Kowalski v. MGTR, Civ. No. 05-00679 BMK; Kowalski v. Citra Mina Seafood Corp., Civ. No. 06-00182 BMK; Kowalski v. Friend; Civ. No. 05-00679 BMK; ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES.